2016.2.1 David Engler, Administrator of the United States, received $50,000 in minor from the State Department for him to receive $50,000 in side payments. Thank you. Bye. Thank you. May it please the Court, Counsel, I'd like to reserve four minutes on rebuttal. Fine. David Engler, on behalf of the estate of the minor, T.F. My name is also the executor of that estate. The facts are in short order here. T.F. was a 14-year-old boy who had been abused by his stepfather, Ziral Bush, who ends up eventually murdering T.F. in this case. It is alleged in our complaint that there were complaints made to Child Protective Services of Mahoning County and that they were aware of the complaints regarding the abuse to the minor, T.F. Further, the complaint alleges that there was communication or complaints made by the Struthers Police Department to Child Protective Services and that those complaints or warnings were unheeded and, in fact, the Child Protective Services did not cooperate with the investigation by the Struthers Police Department. I restate those facts, Your Honor, because it's important to note that this case was decided at a judgment on the pleadings level, and the cases cited by the appellees in its brief are cases that dealt with a summary judgment. This matter is, I believe, the district court applied sort of the bright-line standard of DeShaney when it said, is it action or inaction, rather than taking a look at the more flexible approach that this court has adopted in Colta, where this court, along with the Court of Appeals for the Seventh Circuit, talk about, is the person less safe than they were prior to the alleged decision in this case not to intervene, not to take any further investigatory action that Child Protective Services, we argue, was compelled to. Inaction, we'll call it. All right. You would agree that inaction is the issue here. No? No, I don't, Your Honor. I mean, inaction at the district court level, that's what the judge had ruled upon was action versus inaction. But as Judge Posner said in the Seventh District in the Slade case, the term affirmative act appears in some of the cases but is unhelpful. All acts are affirmative, including standing still when one could save a person by warning him of some impending danger. And it was similar where this court in Colta made the decision not to engage in this metaphysical action or thought process of trying to determine when a failure to act might turn into action or vice versa. Even Judge Posner, I think, took the stance that courts have to in order to get inaction to be equated with an action. Inaction and action, we decide that using another question, whether or not this child, what was done by the child services, what was not done. Did it increase the risk to this child or the danger that he was in? Correct. And the court answered that in a couple ways as no, didn't. Well, I don't believe the court below answered that question. They just looked at action versus inaction and did not look at the actual factual complaint itself. And because it was a judgment on the pleadings, I mean, we said that complaints were made to Children Protective Services. Struthers Police Department made complaints to Child Protective Services. They then did not cooperate with that. And we make the argument that in the complaint itself that that failure to act, that conscious decision, that deliberate indifference, it's the equivalent, Your Honor, of an arsonist, a serial arsonist who continues to put out, to start fires because that jurisdiction is not enforcing arson. Did your complaint allege that it increased the risk to the child by not acting? The complaint alleged that because of the failure to act, he was put in a more dangerous situation. Why is it more dangerous? I mean, I guess the bigger question is, did you actually have that allegation? That's Judge Moore's question. I shouldn't interrupt. No, I'm sorry, Your Honor. It's the act of condoning. It's that act. Where does the complaint say that the action or inaction of Child Services increased the risk to TF? I say, as it's quoted in Judge Leoy's decision, at... Well, I'm looking at your complaint itself, which is very short, so you could perhaps tell me where the complaint says it. It's four pages. Paragraph four. Paragraph four. Arnold concluded that the plaintiff alleges that by his refusal, Arnold acted in derogation of his responsibilities under Ohio law and, quote, increased TF's susceptibility to future violence. Where does it say that it increased his susceptibility in the complaint? I don't see it. I'm hoping you'll just point it out to me so I can then see it. I'm not looking at my complaint, Your Honor. I'm looking at the decision by Judge Leoy. But it refers back to paragraph four. But paragraph four, which I'm looking at, says TF was identified to Arnold as an abused child. Arnold was obliged to report and investigate. Arnold concluded that this was an accident. In so concluding, Arnold acted in derogation of his responsibilities under Ohio law. Then you say, further, Arnold's inaction with regard to notification that TF was an abused child increased TF's susceptibility. How did it increase? Do you give any specific ways that it increased his susceptibility to future harm? Thank you for your assistance. Okay, that is the language. First, it's the judgment on the pleadings. So we're alleging that it increases susceptibility. Going back to what I had mentioned to Justice Cook, the issue is that you're condoning this action. If you continue to abuse TF in the front yard or the teachers see it, and complaints are made to Child Protective Services, unlike COLTA, unlike Smithers, where this is the actual job of this entity is to protect children. They get the complaint. Nothing happens. When nothing happens, the – But you're arguing a deliberate indifference standard, I think. Correct. Okay. But no case supports that. And in particular, is your argument not in conflict with DeShaney from the U.S. Supreme Court? Well, it's not in conflict with DeShaney, I think, because – not in conflict with DeShaney, but I think over time, including this court in COLTA has refined, and I think that's the exact language that this court uses in COLTA, that we refine the test. Instead of just having that bright-line test of action in action, this court says we're going to look at that in context with the safety, and worse, put in more jeopardy at that point. That's what happened in COLTA. COLTA is then quoted in the Smithers case. That is specifically, and particularly on the judgment on the pleadings, both COLTA, Smithers, and the case decided by Apolis, we're not at the summary judgment motion. We do not have the ability to go further and develop all the specific actions or the deliberate indifference that we're alleging that was created by Children Protective Services. So what about the impact of Iqbal and Twombly from the Supreme Court about the specificity that you need to have in your complaint? In other words, I understand your point that this is not summary judgment, and that's a perfectly valid and good point. But don't you have to have, under Iqbal and Twombly, which we are bound by, don't you have to have some indication of how Arnold's failure to act increased the risk to TF? And one way it did, of course, was by letting TF stay in the control of his stepfather. But then I get to DeShaney, and I think that wasn't enough in DeShaney. DeShaney was 5'4", with a very strong dissent from Justice Blackmun about poor Joshua and how Joshua was let back in the control of the bad person who killed him or made him incapable of enjoying life in any way. So I really have trouble seeing why your complaint meets. I'm looking and relooking as you're talking on the COLTA decision, and it says, well, inaction versus affirmative act, let's not quibble about that. But it still says there has to be an increase in the risk. And you're right that Paragraph 4 says it increased it, but then we've got the problem of Iqbal and Twombly. But, Your Honor, I'm not sure, you know, without almost speculating or putting in, quoting a social service worker, quoting an expert in my complaint at that stage to sort of bolster the notion that by not responding to the arsonist and not responding to the abuser, this man, Zyrell Bush, was able to freely abuse TF, and no one came to his aid, even when the police called, even when the teachers made the complaints, the neighbors made the complaint. They didn't take any action. And that that increased the susceptibility of TF to future harm at that point in time. That is, without putting in some expert testimony at that point in time as to what the mind of an abuser can do, I don't think Iqbal requires. It's the best case. I mean, it supports your position. COLTA. COLTA, Your Honor. COLTA wants an affirmative, wants you to plead an affirmative risk-creating act of these officials. And you didn't do that, I don't think, counsel, did you? Yes. And I go back to the issue of COLTA saying we're not going to go through that metaphysical area to say, is it an affirmative act or isn't it an affirmative act? I think you're arguing that COLTA says whatever you say will work. And that isn't the way I read the case. I read COLTA to suggest that this Court moved away from that action-in-action standard to further refine that test, that you no longer have to have just action-in-action. You have to say, is there and because. You have to say what? Go ahead. You have to say, is he less safe now than he was before this thing happened? But less safe. Where do you say that? In Paragraph 4, I say he's susceptible to future violence is what I say in Paragraph 4. I'm not saying it increased his susceptibility, but I don't understand, given DeShaney, how allowing a child to be retained in the custody of an evildoer is increasing the child's susceptibility. Because I'm bound by DeShaney. I didn't decide DeShaney, but I'm bound by it. But this Court has moved away from DeShaney ever so slightly. DeShaney is a Supreme Court case. We can't move away from it. We're bound by it. It has refined it. Let me use the language of the exact Court. It has refined the test in DeShaney. Specifically, I know that this is based on your complaint,  as opposed to just maintaining the risk. It increases the risk because the person is emboldened. They're enabled. No one's come— Leoy dealt with that and said that is an unwarranted inference. Did she not? She did say that, Your Honor, but this is still judgment on the pleadings. I suggest that— Well, you need an inference to prevail. I think she's making—and you're making the point right now. It emboldened him. Correct. Wasn't there a case— It made him— It's not written in your opinion. It made him more susceptible to— In your complaint. It made him more susceptible to violence. Same thing. Okay. Same thing. Isn't there a case in Bukowski that says that— Yes. And that was a case where arguably it's worse in that the police returned the young woman to her abuser. So they had the young woman in their custody, and they returned her to the abuser, and she's then further abused. So it doesn't—how do you deal with that case? I think that Bukowski—one, it's summary judgment on Bukowski, not judgment on the pleadings. That's the primary difference between mine and Bukowski cases. Thank you very much. Thank you. May it please the Court. My name is Frank Scaldone. I represent David Arnold. In Descheny, the Court held that the fact that the state returned a child to his parents did not increase the child's risk of harm because the state, quote, placed him in no worse position than in which he would have been had he not acted at all. And I think that that addresses many of the arguments that are being made here. The question that the Sixth Circuit asks is whether— is did David Arnold create or increase the risk to which TF was exposed? And there's no allegation that that is the case. That is set forth in COLTA, right? That is, and that's— That's to look at action versus inaction. To refine— That's the way we do it. Yes, to refine the test in cases that—you know, where it's difficult to apply. Some cases, which I would suggest this is more of a—falls on more of the easier case in this regard, where it's the inaction side of it. But that is the test. Did it increase? Did whatever the state official did or didn't do increase the risk of harm? Correct. So looking at paragraph 4 of the complaint, the last sentence, Arnold's inaction increased TF's susceptibility to violence and abuse. Why is that not enough in a motion for judgment on the pleadings? I think, as you've pointed out or other judges, that it is a legal conclusion that has no explanation of how that would be so. I mean, I saw some of the cases that have been cited by opposing counsel that came from other districts that kind of pushed the boundaries of what constitutes an affirmative act. And there was one, I think, that came out of New York State where the police knew the abuser and in front of the couple, the abused victim and the abuser, mainly the abuser, kind of assured them, nothing's going to happen here. You know, we're not going to prosecute. You know, we're not going to arrest you. And that, even though the police did nothing, it was that conduct that would increase the risk. The emboldening. The emboldening, right. Here you don't have an allegation where there's that connection. There's no allegation of a factual allegation that would upset the district court's ruling. So really it's an Iqbal and Twombly problem that you're saying that the last sentence of paragraph four is not sufficient under Iqbal and Twombly. It says that it increased his susceptibility, but there's no factual development that Iqbal and Twombly require. I think that that's, you know, I didn't think of the case in terms of that, but in reality I think that is, that may be what it boils down to. There's other, I think, pleading problems that may not be quite as significant as that one, but the one that I noticed was that, you know, obviously the plaintiff must affirmatively show that the plaintiff is entitled to relief, not merely consistent with a claim for relief. And when I was looking through the complaint in paragraph four, it talks prior to January 26, 2013, TF was identified to Arnold as an abused child. Then in paragraph five it says on January 24, TF was admitted to the hospital for the injuries. So you could look at this as a pleading problem under Iqbal and Twombly because it's not making an allegation that supports the claim. It's merely consistent with the claim because you have another day in there that he could have been notified after the abuse occurred. But I think, you know, the main problem is there simply is no allegation of fact that supports that kind of connection that we see in some of the other cases that have pushed the envelope in that way. There's no dispute that Mr. Arnold didn't create the risk. That was TF's stepfather who went to prison for his criminal conduct. And there's no allegation that he increased the risk or factual allegation because as DeShaney teaches us, that risk already existed. Unless there are any additional questions, we'll rest and ask the district court or ask this court to affirm the district court's order. Thank you. Thank you. Thank you, Your Honor. The district court indicated that the issue of procedural due process was abandoned. There was, in DeShaney footnote, it said that DeShaney may have a procedural due process claim. The procedural due process claim is that there's a set of laws, statutes in Ohio that call for an investigative framework if there's an allegation of abuse. TF is just that type of person who was entitled to that process that was created by the state of Ohio when there is an allegation. Otherwise, we end up almost always with this situation with Child Protective Services where their response can be, we didn't know. We took no action. That's the safer means for a Child Protective Service agency is to say, we didn't know anything that was going on. We just took no steps to do an investigation. Why isn't that a state law claim as opposed to a federal procedural due process claim? Because clearly if the state people were not following state law, it's in the state's interest to have a state law claim validated there. Right. I believe since I brought this under 83, Your Honor, I added it to this complaint. I do believe it could be a state law claim as well, though. Similarly, and I think DeShaney actually gets to that point in the DeShaney argument saying, we're not saying DeShaney doesn't have other claims available to him, procedural due process and other potential state tort claims is what DeShaney says. If the procedural due process claim here is waived, is it not by virtue of your failing to answer? You failed to file a response to that claim. I think the court in its decision addresses that issue of procedural due process. I cite some cases in my brief as to why it's not waived. I'd ask the court to review it. I'd ask that this matter be remanded at this level back to the trial court so that the estate of TF can go forward and further develop the case and that it was the wrong time to dismiss this case on this 12C motion. Thank you. Thank you. Thank you both for the argument. The case will be submitted with the clerk calling.